## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSE FRANKLIN a/k/a | ) | |
| MONICA JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 17-cv-8376 |
| | ) | |
| v. | ) | The Honorable Marvin E. Aspen |
| | ) | |
| HOWARD BROWN HEALTH CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiff, JOSE FRANKLIN a/k/a MONICA JAMES, by counsel, Edward R. Moor of Moor Law Office, P.C., complaining of the HOWARD BROWN HEALTH CENTER, ("HBHC"), states as follows for her Amended Complaint at Law:

1. This is an action for employment discrimination brought to secure relief for harassment, discrimination and retaliation based on sex and race pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and for race discrimination and retaliation based on the Civil Rights Act of 1870, 42 U.S.C. §1981, as amended ("Section 1981"). The jurisdiction of this Court is invoked to secure protection of, and to redress deprivation of, rights guaranteed by federal law, which law provide for injunctive and compensatory relief for illegal discrimination in employment.

## Jurisdiction and Venue

2. Jurisdiction over this case is conferred on the Court by 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1988.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in the District and the unlawful employment practices alleged herein were committed in the District.

4. On or about October 15, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), charge number 440-2016-00336, alleging race, sex, and sexual orientation discrimination and retaliation against HBHC. (Ex. A, EEOC Charge).

5. On August 28, 2017, the EEOC issued a right to sue letter. (Ex. B, Right to Sue letter).

6. This suit is filed less than 90 days after the notice of the right to sue was issued by the EEOC.

## Parties

7. Plaintiff Jose Franklin a/k/a Monica James ("Plaintiff" or "Monica James") currently resides in Providence, Rhode Island, but at all relevant times resided in Chicago, Illinois. Plaintiff at all times is and was an adult transgender African-American female. Plaintiff at all relevant times was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f), having been employed by Defendant between September 1, 2014 and July 28, 2015.

8. Defendant HBHC is an Illinois not for profit corporation, authorized to do business in the District and which did business in this District at all relevant times.

9. Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b) because at all relevant times it engaged in activities affecting commerce and employed over 15 people.

## General Allegations

10.     At all relevant times, Defendant operated health care facilities in Chicago, Illinois, known collectively as the Howard Brown Health Center.

11.     The stated mission of HBHC is "to eliminate the disparities in healthcare experienced by lesbian, gay, bisexual and transgender people through research, education and the provision of services that promote health and wellness."

12.     As alleged below, Defendant failed to live up to its mission because it knowingly employed staff that harassed black transgender women due to racial and sexual biases.

13.     Monica James was hired by Defendant Howard Brown on September 1, 2014 as a Medical Case Manager.

14.     The Plaintiff was known to be a black transgender woman by Defendant.

15.     An offer of employment at Defendant was extended to Plaintiff after, as an employee of Chicago House, she had conducted a "Trans 101" workshop at 3245 N. Halsted Street in Chicago, Illinois which was attended by employees of the Defendant.  The presentation, *inter alia*, described Plaintiff's and the transgender community's experiences with racial discrimination in the receipt of medical care, including at HBHC.

16.     After the presentation at HBHC, which occurred in the spring of 2014, Plaintiff was encouraged to apply for an open case management position at HBHC by Baylie Blue, an HIV/Aids case manager supervisor at HBHC.

17.     Plaintiff did apply for a position as a Ryan White HIV/Aids case manager and case manager Gilberto Soberanis contacted Plaintiff to arrange an interview.  The Plaintiff submitted to an interview at HBHC.  After the interview Soberanis told the Plaintiff that while her perspective

3

was needed, "the HBHC hiring team" was "not thrilled" to hire her, and he demanded that Plaintiff write a description of her criminal background and the steps she had taken to reclaim her role as a productive citizen. Plaintiff's prior troubled background, common to many Black and Hispanic transgender people, was well known to HBHC as it had been part of her presentation to HBHC in the spring of 2014.

18.     Plaintiff nonetheless complied, and was later hired to start work at HBHC on September 1, 2014.

19.     Plaintiff was told when hired that she would receive on the job training by fellow HIV/Aids case workers, of which there were about ten, was told that Defendant had a zero-tolerance policy for profiling and "targeting" individuals based on their external characteristics, and was told that HBHC did not have a standard form for reporting unprofessional conduct but that if it occurred she was to report the incident to her immediate supervisor.

20.     Gilberto Soberanis was assigned to be Plaintiff's immediate supervisor.

21.     Plaintiff was given a case load of more than 50 high risk individuals and told that her clients had had "problems" with prior case managers and would need to be "won over."

22.     Rather than office Plaintiff with other HIV/Aids case workers, Soberanis stuck Plaintiff in a remote hallway and said that this arrangement "has to work for now" because Plaintiff's "new colleagues were not so welcoming of her as a new hire."

23.     On or about September 4, 2014, co-workers Lyndon Vanderzanden, a care coordinator, and David Scarbossa, an HIV/Aids case manager, both gay white men, started harassing the Plaintiff, by asking "who's the spook"?

24.     Vanderzanden and Scarbossa verbally harassed Plaintiff on a daily basis making dehumanizing and racially charged remarks.

25. Plaintiff was on probation for her first 90 days, so decided to wait to report the verbal harassment until her first weekly review with her supervisor.

26. On or about September 10, 2014, Plaintiff had her first weekly review with supervisor Gilberto Soberanis. Plaintiff told Soberanis about the racial harassment that Vanderzanden and Scarbossa were inflicting on her. Soberanis instructed Plaintiff to not mention racial discrimination so soon unless she was trying to get fired.

27. In early October 2014 Soberanis moved Plaintiff into an office shared by Vanderzanden and Scarbossa.

28. Vanderzanden and Scarbossa both swore at the Plaintiff when she moved in. Vanderzanden told the Plaintiff "listen Black bitch, you tell them that you do not want to work in this office and get the fuck out now. Tell them to put you in the office with the other lazy black girls because we don't need your help in here."

29. Plaintiff reported the incident to her supervisor Soberanis. Soberanis did nothing but tell the Plaintiff that she "needed to make them like you" and that she could start by "sounding like a girl from the hood."

30. Plaintiff, who needed her job, continued working in the office while being harassed by Scarbossa and Vanderzanden who told her that she was too dumb to do the work and should to them a favor an quit.

31. When Plaintiff continued to complain about the harassment to supervisor Soberanis, he told Plaintiff to "assert herself" and "make them" (Scarbossa and Vanderzanden) "like you." He told her that she "needed to sound like a home girl from the hood" which he apparently thought would endear Plaintiff to Scarbossa and Vanderzanden.

5

32.     Plaintiff was invited to appear before three United Nations committees in Geneva Switzerland on November 12, 2014, to speak about police violence against black transgender arrestees.

33.     On November 7, 2014 Vanderzanden told Plaintiff that he was not happy to learn that the Plaintiff would be testifying at the U.N. about racial injustice and that he prayed that she would be lynched so that he would be saved the trouble of doing it himself.

34.     Plaintiff left the station and broke down sobbing.

35.     Plaintiff later told Soberanis that day what had happened.  Soberanis said that he would talk to Vanderzanden and Scarbossa, but that if Plaintiff wanted to make it through probation that she shouldn't mention the incident again because people would just think that she was trouble.

36.     In December, Plaintiff asked HBHC human resource staff members Todd Maskel and Jamel MaGee to be transferred because of her concerns about Vanderzanden and Scarbossa's racial and gender harassment.

37.     Maskel and Magee told Plaintiff to "give it" until January or March and maybe "something will open up" and to give Vanderzanden and Scarbossa "time to adjust."

38.     In January 2015 Soberanis started harassing Plaintiff sending her text messages and telling her that she was stupid, dumb, unprofessional and brain dead, and that reporting racism and sexism to supervisors was not helping her move forward, that she should deny that there were problems between her and Scarbossa and Vanderzanden, and that she "should not mention being discriminated against anymore."

6

39.     Soberanis, in what might have initially been an effort to address the discrimination Plaintiff had complained about, instructed Plaintiff to prepare a power point presentation about effective workplace communication, which she was to present to her co-workers.

40.     At the presentation, which Plaintiff titled "Workplace Communication," Vanderzanden became irate and belligerent because he was being asked to be respectful towards black transgender women, and lashed out at the Black and Hispanic transgender women present, Trisha Holloway, Dana Gonzalez, Jasmine Gonzalez and Plaintiff screaming that he worked harder than all of them and that he "deserved freedom." When the Black and Hispanic attendees reacted negatively to Vanderzanden, supervisor Sobaranis yelled at them to "shut the fuck up" and demanded that apologies be made to Vanderzanden.

41.     By April 2015 Plaintiff's case load was performing well: clients that had not followed healthcare plans before she was hired were using more resources and managing their health better.

42.     When Plaintiff wanted to reach out to a patient that had been out of care for three years, the co-worker that handled appointments, special requests and expired prescriptions, Kevin Keiser, got angry and yelled "stupid black tranny motherfucker, get out of my face."

43.     Plaintiff reported Kevin Keiser to Soberanis and supervisor Kristin Keglovitz. Plaintiff, not Keiser, was written up, and was told to go apologize to Keiser and was told that because Keiser had been employed longer than Plaintiff that no one would believe the Plaintiff.

44.     Plaintiff complained to human resources manager Jamal Magee, who discussed a possible transfer, but also told the Plaintiff to apologize to Keiser for reporting him.

45.     In May 2015, Soberanis gave permission to Vanderzanden to add high need patients to Plaintiff's case load and gave Scarbossa permission to take low need patients from the Plaintiff.

Soberanis told the Plaintiff that "my boss, Mary Brewster, has reported to me that you are still making allegations of racism and sexism and if you want to keep your job you need to do something great."

46.     Plaintiff's Black and Hispanic clients started to ask for more comprehensive services, which would require more than 15 minutes with a physician.  When Plaintiff presented their demand to a group meeting with physicians she was told that she had not learned who was in charge, that she had been nothing but trouble, and that she showed why affirmative action would never work because Black people want too much.

47.     In or about late May or June 2015 Soberanis was abruptly terminated for undisclosed reasons.

48.     On the day Soberanis was terminated Vanderzanden, in the presence of Scarbossa, told Plaintiff "listen Black bitch, it's your turn to go, you can either go voluntarily or involuntarily."

49.     Plaintiff then approached human resource employee Jamal Magee and told her that she still wanted a transfer and that the workplace sex and race harassment had not stopped.

50.     Plaintiff then approached human resource employee Todd Maskel and asked whether Jamal Magee had talked to him about Plaintiff's complaints of sex and race harassment. He responded "yes, we are sorry that we have not been able to do more, but what do you think about joining the Media team?"

51.     Plaintiff also approached Mary Brewster, Director of Social Services, and supervisor Kristen Keglovitz about being transferred away from Vanderzanden and Scarbossa because they were extremely offensive, and Plaintiff feared that physical violence may be next. Brewster and Keglovitz did nothing.

52.     Plaintiff then, in late May or early June, approached President David Munar and asked him if he was aware of the sexual and racial harassment that she had complained about. Munar stated that he and the supervisors were "in talks" about changes.

53.     Plaintiff, on July 8, 2015, unable to bear more harassment, submitted a resignation letter giving two months' notice so her clients could be accommodated, and was scolded by Todd Maskel in an email for resigning.

54.     On July 17, 2015, Plaintiff asked about a patient that she heard Vanderzanden and Scarbossa talking about in the office. Vanderzanden told Scarbossa to shut the door, and when it was shut, stuck his finger in Plaintiff's forehead and said, "I have told you again and again Black bitch that you and I will never be fucking friends."

55.     Plaintiff reported the incident to Mary Brewster and told her that she felt unsafe. Brewster spoke to Vanderzanden and then then told Plaintiff that Vanderzanden "was having a bad day" and that "it would not happen again."

56.     On July 23, 2015 Plaintiff reached out to supervisor Kristin Keglovitz again to ask to be transferred but was not transferred.

57.     On July 23, 2015, Plaintiff contacted HBHC President David Munar concerned about saving her job and reporting that many of her clients were refusing to work with Vanderzanden.  Munar did not respond.

58.     On July 27, 2015, on lunch break, a law firm called Plaintiff to ask her a few questions about an online form she had filled out about job discrimination.  Vanderzanden overheard the call and said "I caught you, and your Black ass is out of here bitch."

59.     On July 28, 2015, upon arriving to work Plaintiff was summoned by Mary Brewster and Michelle Winslow.  Brewster said, "I am sorry but I have to fire you today."  Winslow stated

that "you are fired because of that legal phone called you had yesterday and because you were talking about things that happened to you on the job."

60. Plaintiff was escorted out of the building and her personal possession were mailed to her.

61. Throughout the Plaintiff's ten months of employment at HBHC she was subject, from September 1, 2014 to almost daily racial and sexual harassment. HBHC knew this and permitted it to continue unabated until it fired Plaintiff for complaining about it.

### COUNT I – Title VII Sex Discrimination

62. Plaintiff adopts paragraphs 1 – 61 above as paragraphs 1 – 61 of Count I, as if fully set forth herein.

63. Defendant violated Title VII by failing to respond to multiple pleas from the Plaintiff to address the systemic sex based harassment that she was subjected, and which created a hostile work environment between September 2014 and July 28, 2015.

64. Defendant violated Title VII by discharging the Plaintiff because she was a woman and because she reported gender based harassment by co-workers.

65. Defendant violated Title VII because a substantial factor in the Plaintiff's termination was retaliation for her prior reporting of sexual harassment at the hands of her co-workers.

66. Defendant's conduct was unreasonable, and alternatively was willfull and wanton or intentional.

67. As a proximate result of Defendant's illegal indifference to her federally protected rights, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, by counsel, respectfully prays that this Court provide the following legal remedies:

    a.    Award Plaintiff lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

    b.    Enjoin Defendant from discriminating against transgender women by allowing workers to create a hostile work environment;

    c.    Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

    d.    Award compensatory damages;

    e.    Award punitive damages; and

    f.    Award any other relief that this Court deems just.

Plaintiff demands trial by jury.

## COUNT II – Title VII Race Discrimination

68.    Plaintiff adopts paragraphs 1 – 61 above as paragraph 68 of Count II, as if fully set forth herein.

69.    Defendant violated Title VII by failing to respond to multiple pleas from the Plaintiff to address the systemic racial harassment that she was subjected, and which created a hostile work environment between September 2014 and July 28, 2015.

70.    Defendant violated Title VII by discharging the Plaintiff because she was black and because she reported gender based harassment by co-workers.

71.    Defendant violated Title VII because substantial factor in the Plaintiff's termination was retaliation for her prior reporting of racial harassment at the hands of her co-workers.

72.     Defendant's conduct was unreasonable, or alternatively, was willfull and wanton or intentional.

73.     As a proximate result of Defendant's illegal indifference to her federally protected rights, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, by counsel, respectfully prays that this Court provide the following legal remedies:

a.     Award Plaintiff lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b.     Enjoin Defendant from discriminating against black workers by allowing workers to create a hostile work environment;

c.     Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

d.     Award compensatory damages;

e.     Award punitive damages; and

f.     Award any other relief that this Court deems just.

Plaintiff demands trial by jury.

## COUNT III – § 1981 Race Discrimination

74.     Plaintiff adopts paragraphs 1 – 61 above as paragraph 74 of Count III, as if fully set forth herein.

75.     Defendant violated § 1981 by failing to respond to multiple pleas from the Plaintiff to address the systemic racial harassment that she was subjected, and which created a hostile work environment between September 2014 and July 28, 2015.

76.     Defendant violated § 1981 by discharging the Plaintiff because she was black and because she reported racial harassment by co-workers.

77.     Defendant violated § 1981 because substantial factor in the Plaintiff's termination was retaliation for her prior reporting of racial harassment at the hands of her co-workers.

78.     Defendant's conduct was unreasonable, or alternatively was willfull and wanton or intentional.

81.     As a proximate result of Defendant's illegal indifference to her federally protected rights, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, by counsel, respectfully prays that this Court provide the following legal remedies:

a.      Award Plaintiff lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b.      Enjoin Defendant from discriminating against black workers by allowing workers to create a hostile work environment;

c.      Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

d.      Award compensatory damages;

e.      Award punitive damages; and

f.      Award any other relief that this Court deems just.

Plaintiff demands trial by jury.

## COUNT IV - Retaliation

82.     Plaintiff adopts paragraphs 1 – 61 above as paragraphs 1 – 61 of Count IV, as if fully set forth herein.

83.     Defendant  violated Title VII, 42 U.S.C. § 2000e-3(a) and § 1981 by retaliating against Plaintiff for exercising her right to report what she reasonably believed to be racial harassment to a supervisor and inflicted materially adverse actions upon her by harassing her for making the reports.

84.     Defendant  violated Title VII, 42 U.S.C. § 2000e-3(a) by retaliating against Plaintiff for exercising her right to report what she reasonably believed to be sex harassment to a supervisor and inflicted materially adverse actions upon her by harassing her for making the reports.

85.     Plaintiff's complaint to her employer of the above described racial and sex harassment was a protected activity.

86.     Defendant violated Title VII, 42 U.S.C. § 2000e-3(a) by discharging the Plaintiff for complaining about sex harassment and seeking legal assistance.

87.     Defendant violated Title VII, 42 U.S.C. § 2000e-3(a) and § 1981 by discharging the Plaintiff for complaining about racial harassment and seeking legal assistance.

88.     A substantial factor in the Plaintiff's termination was her protected activity of seeking legal assistance to redress sex and racial harassment.

89.     As a proximate result of Defendant's illegal retaliation, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, by counsel, respectfully prays that this Court provide the following legal remedies:

a.  Award Plaintiff lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b.  Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

c.  Award compensatory damages;

d.  Award punitive damages; and

e.  Award any other relief that this Court deems just.

Plaintiff demands trial by jury.

/s/ Edward R. Moor
Attorney for Plaintiff

Edward R. Moor, ARDC# 6205169
MOOR LAW OFFICE, P.C.
One N. LaSalle Street, Suite 600
Chicago, Illinois 60602
312-726-6207
erm@moorlaw.net

**Attorney for Plaintiff**

# EXHIBIT A –

# EEOC Charge

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | 440-2016-00336 |

### Illinois Department of Human Rights
State or local Agency, if any

and EEOC

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Monica James | (847) 769-6317 | 12/16/1971 |

Street Address — 7953 S. Muskegon, Apartment 2D, Chicago, IL 60617    City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Howard Brown Health Center | About 300 at location | (773) 388-1600 |

Street Address — 4025 N. Sheridan Road, Chicago, IL 60613    City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address    City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN
[X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] GENETIC INFORMATION
[X] OTHER (Specify)   **Sexual Orientation**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 2014    Latest: 09/01/2015

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Statement of Harm:** Howard Brown Health Center subjected me to different and worse treatment based on the fact that I am an African-American female. In January 2015, licensed clinician, Lyndon Vandervanden, made a derogatory comment that "all Black people are aggressive and unprofessional." I reported some of Mr. Vandervanden's comments to the director of case management, Mary Brewster; but he was not reprimanded. Yet the Health Center claims I was terminated because of "unprofessional behavior," "the tone of my voice," and "threatening behavior" as a pretext.

**Statement of Discrimination:** Howard Brown Health Center terminated my employment, and subjected me to harassment based on my status as an African-American female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 10/14/2015   Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

RECEIVED EEOC

OCT 15 2015

CHICAGO DISTRICT OFFICE

**EXHIBIT B –**

**Right to Sue Letter**

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Monica James**<br>c/o Tanvi K. Sheth, Attorney<br>TRANSFORMATIVE JUSTICE LAW PROJECT (IL)<br>203 North LaSalle Street, #2169<br>Chicago, IL 60601 | From: **Chicago District Office**<br>500 West Madison Street, #2000<br>Chicago, IL 60661 |

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2016-00336** | Kimberly M. Engram,<br>Investigator | (312) 869-8035 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

Julianne Bowman,
District Director

8/28/17
(Date Mailed)

cc: **HOWARD BROWN HEALTH CENTER**
c/o Jodi Wilner Moran, Attorney
JACKSON LEWIS
150 North Michigan Avenue, #2500
Chicago, IL 60601

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | 440-2016-00336 |

## Illinois Department of Human Rights

State or local Agency, if any

and EEOC

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Monica James | (847) 769-6317 | 12/16/1971 |

| Street Address | City, State and ZIP Code |
|---|---|
| 7953 S. Muskegon, Apartment 2D, Chicago, IL 60617 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Howard Brown Health Center | About 300 at location | (773) 388-1600 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4025 N. Sheridan Road, Chicago, IL 60613 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN

[X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] GENETIC INFORMATION

[X] OTHER (Specify)   **Sexual Orientation**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 2014   Latest 09/01/2015

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Statement of Harm:** Howard Brown Health Center subjected me to different and worse treatment based on the fact that I am an African-American female. In January 2015, licensed clinician, Lyndon Vandervanden, made a derogatory comment that "all Black people are aggressive and unprofessional." I reported some of Mr. Vandervanden's comments to the director of case management, Mary Brewster; but he was not reprimanded. Yet the Health Center claims I was terminated because of "unprofessional behavior," "the tone of my voice," and "threatening behavior" as a pretext.

**Statement of Discrimination:** Howard Brown Health Center terminated my employment, and subjected me to harassment based on my status as an African-American female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 10/14/2015   Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

RECEIVED EEOC

OCT 15 2015

CHICAGO DISTRICT OFFICE



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). *Be sure to include your name, address, phone number and EEOC charge number with your request.*

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* **Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or**

* **After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.**

If you are the *Respondent* you may be granted access to the file *only after* a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.** You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, **it is recommended that you first review your file** to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent **in its entirety** to the copy service, **and you will be responsible for the cost.** Payment must be made directly to **Aloha Print Group,** which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf; your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

### IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

### ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

### DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

### IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.