# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSE L. FRANKLIN, | ) | |
| | ) | |
| **Plaintiff,** | ) | No. 17 C 8376 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| HOWARD BROWN HEALTH CENTER, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

On August 27, 2018, the defendant again moved to extend the discovery cutoff so that it could issue non-party subpoenas to a wide variety of social network platforms, and for a court order directing those platforms to comply with the subpoenas. [Dkt. #59]. It is the defendant's second motion for an extension of the close of discovery in a month, with both coming either on the day of, or just before, the close of discovery. Of course, eleventh-hour requests for extensions often bear on the legitimacy of the request. *See Connecticut Gen. Life Ins. Co. v. Chicago Title & Trust Co.*, 690 F.2d 115, 115 (7th Cir. 1982)(Posner, J.); *Hare v. Comcast Cable Commc'ns Mgmt., LLC*, 564 Fed.Appx. 23, 24 (4th Cir. 2014); *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *7 (N.D. Ill. 2016); *In re Energy Res. Co., Inc.*, 82 B.R. 172, 173 (D. Mass. 1987). Here, however, the denial of the defendant's current motion is based on the merits, not solely on the timing of its filing.

### A.

Discovery in this case was set to end on August 1, 2018 by Order of Judge Aspen. [Dkt. #15]. But, near the close of business on that date, the defendant filed a motion for an extension of the

discovery deadline [Dkt. #35], based on a July 23, 2018 email it had received from Nevaeh Anderson in which Anderson complained at length about how she claimed she was treated when applying for a job with defendant *five months earlier*. [Dkt. #59, Ex. A]. After Anderson contacted the defendant on the 23rd, she again emailed the defendant on July 27th saying that she had spoken *to plaintiff,* who, Anderson said, "ha[d] been a great help and giving her advise [sic] *and the other trans women of color in the [Facebook] group who have issues with [defendant]*." [Dkt. #35, ¶ 3, Ex. A](Emphasis supplied).

The defendant then supplemented its initial disclosures and provided the emails to the plaintiff on July 30, 2018. Plaintiff added Nevaeh Anderson as a person with knowledge and as a possible witness. The defendant sought to expand the discovery schedule on August 1 [Dkt. #35], a few days before the time for discovery extended by Judge Aspen [Dkt. #15] was to expire. According to the defendant's brief motion, discovery was needed "to investigate whether or not *plaintiff* has played a role in inducing a former applicant to HBHC to make an *apparently fabricated* complaint of discrimination right before the close of discovery." [Dkt. #35 at 1, ¶ 2](Emphasis supplied). The theoretical or evidentiary basis for the potential admissibility at trial of the information that the defendant hoped it might learn in discovery was not stated in the defendant's Motion. Nor did the Motion cite any authority explaining or justifying admission at trial were the defendant to discover that the plaintiff had a role in Anderson's e-mail complaint. Skeletal and unsupported arguments are generally not to be considered. *See, Alexander v. City of South Bend,* 433 F.3d 550, 552 (7th Cir.2006); *Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir.2005); *McWilliams v. McWilliams*, 2006 W. L. 3775952, 1-2 (N.D.Ill.2006).

Unfortunately, it was not until the defendant's reply brief [Dkt. #71], that spoliation was mentioned, and a recent case (from this court) discussing the theory was cited. See *BankDirect Capital Finance LLC v. Capital Premium Finance, Inc.*, 2018 WL 1616725 (N.D.Ill. 2018). But reply briefs are for replying," not for raising and developing points that ought to have been raised and developed in an opening brief. *Hussein v. Oshkosh Motor Truck Company*, 816 F.2d 348, 360 (7th Cir. 1987)(Posner, J., concurring). *See also Citizens Against Ruining The Env't v. E.P.A.*, 535 F.3d 670, 675 (7th Cir. 2008); *Electro-Brand, Inc. v. MEM-CE, L.L.C.*, 2018 WL 1189691, at *3 n. 2 (N.D. Ill. 2018)(quoting *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 249 F.R.D. 530, 536 (N.D. Ill. 2008)). By not specifically advancing or explaining a theory of admissibility until its reply brief, the risk that the plaintiff would be substantially hindered in its response and that it and the court's analysis would be adversely affected was quite high. But that usually is the purpose for the delay. While the theory of admissibility was not discussed and explained until the Reply, arguably the Motion gave general notice of what the sought after discovery hoped to achieve.

**B.**

The reply brief relied on the doctrine of spoliation, which is an enduring principle of the common law. In essence, it provides that when a litigant – here, allegedly the defendant – has destroyed, *fabricated*, or suppressed evidence, the trier of fact may (but need not) draw an inference that the spoliator believes its case is weak or unfounded. The inference can be either permissive or obligatory, and it is often for the jury (although not always) to determine whether the inference will be applied in the particular case before it. The principle has best been described by Dean Wigmore:

> It has always been understood—the inference, indeed, is one of the simplest in human experience—*that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication* or suppression *of evidence* by bribery or spoliation, and *all similar conduct* is receivable against him as an indication of his consciousness that this case is a weak or unfounded one; and from that consciousness

3

may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause. 2 Wigmore, Evidence § 278 at 133 (3d Ed.1940) (emphasis supplied).

*See also, Maguire & Vincent, Admissions Implied From Spoliation or Related Conduct*, 45 Yale L.J 226 (1935). *See generally, Lutalo v, National Railroad Passenger Corp.*, 2013 W. L. 1294125 at *5 (D. Colo. 2013). *See BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc., supra.*.

In any event, the defendant asked that the August 1st deadline now be extended to "September 3rd for the sole purpose of limited discovery into Anderson's allegations." [Dkt. #35, at 4]. Judge Aspen granted the motion on August 2nd [Dkt. #40] over plaintiff's objections. [Dkt. # 35, ¶11]. The defendant then sought another indefinite extension of discovery past the September 3rd deadline, supposedly based on what it learned in the previous month, even though it wasn't much. Defendant deposed Anderson, who was allegedly uncooperative, hostile, coarse, and vulgar. The deposition lasted three hours and concerned itself exclusively with the single email complaint about a phone call to defendant's HR department.

Ms. Anderson did not fully comply with a document subpoena issued for her emails and Facebook posts regarding the defendant. She gave various reasons, including a claim of a broken phone and limited skill with technology.[1] And, she now claimed that she was mistaken in her July

---

[1] It should be noted that defendant gave her just ten days to comply [Dkt. #59-5], which, in other circumstances, is often thought to be unreasonable. Fed.R.Civ.P. 45(d)(2)(B) suggests that 14 days is the benchmark for time for compliance, *see Tri Investments, Inc. v. Aiken Cost Consultants, Inc.,* 2011 WL 5330295, 1 (W.D.N.C.2011), and less than that is unreasonable. *AngioScore, Inc. v. TriReme Medical, Inc.,* 2014 WL 6706898, 1 (N.D.Cal.2014)(9 days inadequate); *Dixon v. Greyhound Lines, Inc.,* 2014 WL 6474355, 4 (M.D.La.2014)(9 days including 3–day holiday weekend inadequate); *Thomas v. IEM, Inc.,* 2008 WL 695230, at *3 & n. 10 (M.D.La.2008) (15 days was inadequate, especially considering the Christmas holiday fell within those 15 days); *Hernandez v. City of Corpus Christi,* 2011 WL 2194254, at *1 (S.D.Tex.2011) (quashing subpoena *duces tecum* that gave 10 days for compliance); *In re Sulfuric Acid*
(continued...)

27th email to Melissa Soulier, who works for the defendant, when she said that the *plaintiff* was the person who had advised her of the steps to take to make a complaint to the defendant about the way she claimed in her email of July 23rd that she had been treated. She now claimed that it wasn't the plaintiff who had advised her, but rather that it was Monica James who "had been a great help and giv[en her] advice and the other trans women of color in the group who have issues with 'y'all.'" [Dkt. #59, Ex. C; Dkt. 59, at 6-7].

Any testimony from Anderson (or anyone else) about the negative comments she claimed she had seen on the internet and in email messages from "other trans women of color in the group who have issues with 'y'all,'" would be inadmissible under the hearsay rule, Rules 801, 802, Federal Rules of Evidence – even if the defendant could come up with some theoretical non-hearsay purpose for which the evidence was being offered. The hearsay rule recognizes that a jury's capacity to distinguish between hearsay and non-hearsay uses of evidence is limited. So too does Rule 403, which authorizes exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading a jury. In the context of the preceding evidence a limiting instruction cautioning the jury about some limited purpose for which the otherwise inadmissible evidence was being offered by the plaintiff would involve an admonition to the jury to perform a mental gymnastic beyond its powers. *Cf. Nash v. United States,* 54 F.2d 1006, 1007 (2nd Cir.1932)(L.Hand, J.). As Justice Cardozo once aptly said, "[d]iscrimination so

---

[1](...continued)
*Antitrust Litigation,* 231 F.R.D. 320, 327 (N.D.Ill.2005)(ten business days deposition notice unreasonable in complex litigation); *Mann v. Univ. of Cincinnati,* 824 F.Supp. 1190, 1202 (S.D.Ohio), *aff'd,* 152 F.R.D. 119 (S.D.Ohio 1993), *aff'd,* 1997 WL 280188, 5, n.5 (6th Cir.1997)(requiring compliance with subpoena in less than fourteen days deemed unreasonable). It is noted that at least one of defendant's subpoenas to one of Anderson's emails internet hosts also violated this standard. [Dkt. #71-4].

subtle is a feat beyond the compass of ordinary minds. The reverberating clang of those accusatory words would drown all weaker sounds." *Shepard v. United States,* 290 U.S. 96, 104. 196 (1933).

In any event, Anderson said Moaton, who works in defendant's HR department, encouraged her to file a complaint so that defendant could take care of it internally. [Dkt. #59-7, at 31-32]. Basically, Anderson testified that she had simply wanted to make a complaint to the defendant by her email of July 23rd. It was not, according to her, a big deal; it was simply intended, she said, to a brief gripe about how she claimed she was treated over the phone – a call that curiously did not occur until five months after her job interview with the defendant. And now, she claimed, she found herself being deposed in a federal case. [Dkt. #59-7, at 30-31]. When defendant's counsel needed a second break [Dkt. #59-7, at 62] during the deposition, she said:

> Please -- oh, my god. Please be respectful of my time. Because, again, I have 30 minutes and I was under the impression I was only supposed to be here for 15 minutes to answer some questions. I'm not suing Howard Brown. I don't have anything going on with Howard Brown. I'm not understanding why my complaint has resulted to this. I mean, ask me a whole bunch of questions about a bunch of stuff that, quite frankly, I didn't care to remember because again, I was going through my LivWell lawsuit. I'm not understanding that. No matter what other information that you try to press from me, I don't have my phone. I don't have my e-mail. I don't have my previous e-mail address. I didn't think anything of it. I haven't posted anything about Howard Brown and the only people that honestly are worried about this is you. I don't have shit else to do with this and I don't want shit else to do with this. And quite frankly, this has been fucking with my PTSD the entire time, which has been very obvious today.

[Dkt. #59-7]. Counsel took his break, and the questioning went on for another 40 pages of transcript.

In the end, defendant says it is troubled by the fact that:

(i) Plaintiff is Facebook friends with Tatyana Moaton, the woman Anderson now claims persuaded her to make her apparently false allegations on July 23, 2018, and (ii) on January 18, 2018, around the time Anderson applied to HBHC, Plaintiff joined a Facebook transgender group called "TRANS Chicago Group," and on August 5, 2018, 3 days after the Court granted HBHC the right to conduct limited discovery on

6

Anderson's allegation and one day before she downloaded the Facebook documents that she produced on August 24, 2018, Plaintiff unfollowed the "TRANS Chicago Group" group on Facebook.

[Dkt. # 59, ¶ 19].[2]

## C.

Defendant also suspects that Tatyana Anderson never called to inquire about her application over the preceding five months, and did not set up the email account she supposedly sent her complaint from, because her name is misspelled in that address – Navaeh instead of Nevaeh (although Anderson claimed this was due to her phone's autocorrect) – and because the email was blind-copied to defendant, and Anderson claimed she did not know how to do that. Because her explanations seem odd, the defendant now seeks what is essentially an open-ended extension of discovery for interrogatories and document requests to plaintiff regarding correspondence she had with Moaton, and it seeks to issue non-party subpoenas to Facebook and a significant miscellany of other internet hosts for Anderson's email accounts. The hope is that something will be found showing a relationship between Anderson and the plaintiff and implicating the plaintiff in the complaint made long after her interview with the defendant and on the eve of the close of discovery in this case.

Defendant has already subpoenaed at least one of these entities – Google – for Anderson's account content, and Google has objected under 18 U.S.C. §2702(b), which forbids it to divulge such information except in limited cases, with a civil subpoena not being among them. *See, e.g., Special Markets Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348, at *2 (N.D. Ill. 2012). Defendant

---

[2] The timing of the "unfollowing" is curious, to say the least. But it does not justify the relief sought by the defendant.

submits that the court will simply have to go through multiple subpoena proceedings – motions to quash and accompanying briefing and briefing for court orders to plaintiff and Anderson to require their consent to the release of their private account content. [Dkt. # 71, at 5]. Defendant doesn't cite any case where a court issued such an order; only a case where a court suggested it was possible for another court to issue such an order in the abstract, in a footnote, while *quashing* the very type of subpoena the defendant has issued or will issue in this case. *See In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 614 (E.D. Va. 2008). Finally, and oddly, the defendant doesn't indicate whether it has even approached Anderson or plaintiff for their consent to the platforms complying with defendant's subpoenas [Dkt. #71, at 5; #71-4]; 18 U.S.C. §2701(b)(3).

The defendant is broadly and indiscriminately seeking any information it can gather regarding what it hopes will show that the plaintiff induced Anderson to make "a fabricated complaint of discrimination right before the close of discovery." [Dkt. #35, ¶ 2]. Of course, questions of credibility generally have decisive significance in litigation. Indeed, in gauging the truth of conflicting evidence, the trier of fact "has no simple formulation of weights and measures upon which to rely. *The touchstone is always credibility;* the ultimate measure of testimonial worth is quality and not quantity." *Weiler v. United States,* 323 U.S. 606, 608 (1945)(Emphasis supplied). *See also N. L. R. B. v. Walton Mfg. Co.*, 369 U.S. 404, 408 (1962);*See also Portuondo v. Agard*, 529 U.S. 61, 61–62 (2000)(credibility determinations serves the trial's truth seeking functions); *United States v. Abel*, 469 U.S. 45, 52 (1984)(credibility bears on the accuracy and truth of a witness's testimony); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007)(cases almost always turn on credibility determinations); *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491 (7th Cir. 2000)(same).

But, the appropriate limits of discovery under Rule 26(b) involve far more than merely an inquiry into relevance – although relevance is clearly the threshold and indispensable inquiry. *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017); *Ossola v. American Express Company*, 2015 WL 5158712, at *7-8 (N.D.Ill., 2015).[3] The timing of the request, its circumstances, and issues of proportionality in the specific case are all important factors to be considered under Rule 26(b). *Daher v. Sevier*, 724 F. App'x 461, 464 (7th Cir. 2018). Neither before nor after the amendments to Rule 26 are "fishing expeditions" permissible. *See, e.g., Equal Employment Opportunity Comm'n v. Union Pac. R.R. Co.*, 867 F.3d 843, 852 (7th Cir. 2017); *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc.*, 674 F.3d 630, 637 (7th Cir. 2012). And yet that is what the defendant wants to do.

Anderson may have lied about how she was treated by the defendant or she may have told the truth.[4] And she may have had some relationship with the plaintiff, who may have prompted her to have written the emails to the defendant and to make the claims she did about the defendant's attitude and treatment of transgender people. But, much of the force of the defendant's insistence that discovery must be expanded – exponentially and at this late date – has been rendered irrelevant

---

[3] The Supreme Court has cautioned that the requirement that the material sought in discovery be "relevant" should be firmly applied, and that "judges should not hesitate to exercise appropriate control over the discovery process. *Herbert v. Lando,* 441 U.S. 153 (1979). Failure to exercise that control results in needless costs to the litigants and to the due administration of justice. Appropriate limits on discovery can effectively channel the efforts of counsel *before* excessive time and resources are expended. *Montanez v. Simon,* 755 F.3d 547, 552 (7th Cir.2014). *Cf. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); Frank Easterbrook, *Discovery as Abuse,* 69 B.U.L.Rev. 635 (1989. *See also Hickman v. Taylor,* 329 U.S. 495, 507–508 (1947).

[4] Defendant suggests that because Anderson misidentified defendant's employee Joel Murray as Joel Murphy, and lied about posting in a trans online forum, she likely lied about her experience over the phone with defendant's HR department. [Dkt. # 59, at 6]. Perhaps. But Anderson will not be a witness at trial and thus her credibility is a nonissue.

by the plaintiff's lawyer having removed Ms. Anderson from the witness list. [Dkt. #71 at 4]. Whether this is a consequence of the defendant's request for expanded discovery is of no moment. For present purposes it matters only that Anderson is not to be a witness and therefore her credibility – and the matters about which she claims to have knowledge – will not be a matter for the jury's consideration.

Importantly, there's no telling what defendant did following its deposition of Anderson; but one would have assumed that defense counsel certainly would have talked to defendant's HR person, Moaton, and asked her if she suggested Anderson complain to defendant. There's no information along those lines in defendant's motion. Plaintiff did depose Moaton, and defendant tells us – there is not a transcript of that deposition – that Moaton testified she didn't discuss Anderson's allegations with Anderson. [Dkt. # [Dkt. # 71, at 4]. So, she contradicts Anderson's deposition testimony. And now, it would seem, defendant has shifted focus from plaintiff's dealings with Anderson, if any, to plaintiff's dealings with Moaton. [Dkt. # 71, at 3].

Plaintiff has already produced her entire Facebook account in native format. Defendant leaves unclear what end subpoenas to Facebook would now serve, stating only that plaintiff "unfollowed" a certain Facebook group. The defendant's partisan hunch about the meaning of this action is somewhat opaque, as is the articulation of what exactly it hopes to gain by extended discovery, especially as it goes far afield from the central issue of the case and would seem to go more to the veracity of a third party who sent defendant an email complaint about her supposed treatment by the defendant. The reeds the defendant's motion offers are too thin to support yet another extension of discovery, especially an unlimited extension in the face of an October 15th deadline for dispositive motions.

While defendant's claim in its Reply Brief that discovery is needed to investigate *whether* Plaintiff played a role in inducing Anderson "to make an *apparently fabricated* complaint of discrimination right before the close of discovery", [Dkt. #35, ¶ 2] (emphasis supplied) -- and thereby hopefully to make out a claim of spoliation -- it fails to explain how it hopes to prove that plaintiff was the motivating force in Anderson's email to defendant. [Dkt. #71, at 7]. It certainly has not offered a particle of evidence that supports the speculation on which the claim for a another extension is bottomed. Neither speculation, nor hopes, nor hunches is ever a substitute for proof. *See Ray v. Clements* 700 F.3d 993, 1017 (7th Cir.2012); *Lauth v. McCollum,* 424 F.3d 631, 634 (7th Cir.2005). And in the context of discovery, neither is a basis for the kind of relief that is sought under the circumstances now presented.

No doubt the defendant will say that answering that question is the very reason why discovery is necessary. After all, the defendant will insist, if it already knew the answer to the question, discovery would not be necessary. But that sort of a response begs the question; if accepted uncritically, it would make the long standing and continued prohibition against fishing expeditions a dead letter. It is not. *See, e.g., Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th Cir. 2015); *Koshani v. Barton*, 2018 WL 4494096 (E.D.Tenn. 2018). Under the facts of this case, the absence of any basis for what the defendant hopes might turn up is an inappropriate basis for the expanded discovery that is sought. And that is especially true where, as here, Ms. Anderson – without whom any claim of spoliation is rendered difficult to prove –will not be a witness at trial.

There is, of course, a second consideration that should not be overlooked. The defendant's theory on which expanded discovery should be allowed would ultimately result in a trial the focus of which would not be on the infractions allegedly committed by the *defendant* against the plaintiff, but on whether the *plaintiff* had tried to fabricate claims of misconduct against the defendant with Anderson. While the ultimate resolution of the admissibility of that difficult situation would of course be for Judge Aspen to resolve, decision now must be made as a matter of the administration of discovery and in which there is little beyond the hopes and tendentious speculations of the defendant."'[O]ver discovery'" is an increasing problem in modern litigation. The amendments to Rule 26 seek "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed [even] to matters that are otherwise proper subjects of inquiry." *SDIF Ltd. P'ship 2 v. Tentexkota, LLC*, 2018 WL 3254489, at *1 (D.S.D. 2018). That power is properly exercised in this case.

*Apple Inc. v. Qualcomm Inc.*, 2018 WL 3861893, at *4 (S.D. Cal. 2018), is, at best, on the peripheries of this case. Throw in a three-hour deposition of a third-party about her email to the defendant about a phone call to its HR department concerning her application, along with the fact that the defendant has not – so far as this record reveals – spoken with its own people who were named in that deposition. *See* Fed.R.Civ.P. 26(b)(1) (requiring consideration of "the parties' relative access to relevant information . . . ."). Season liberally with what are certain to be several rounds of combat over internet server subpoenas and proportionality leads to only one conclusion: the month of additional discovery coupled with the withdrawal of Anderson as a witness, compels the conclusion that the motion for additional discovery should be denied.

As noted earlier, courts have substantial discretion in administering discovery and in setting deadlines. *King v. Ford Motor Co.*, 872 F.2d 833, 838 (7th Cir. 2017); *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017). Exercise of that discretion is reviewable for abuse, which occurs only "when no reasonable person could take the view of the district court." *United States v. Re,* 401 F.3d 828, 832 (7th Cir.2005). *Accord Paske v. Fitzgerald,* 785 F.3d 977, 983 (5th Cir.2015). Under the facts of *this* case, the open ended, broad-based extension of discovery that the defendant is seeking is unwarranted. The "book isn't worth the candle'" The discovery rules are not a ticket, Judge Moran has wisely observed, to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Vakharia v. Swedish Covenant Hospital,* 1994 WL 75055, *2 (N.D.Ill. 1994). In this case,"there was enough discovery ... to choke a horse. * * * [E]nough is enough." *Walker v. Sheahan,* 526 F.3d 973, 981 (7th Cir.2008).

Accordingly, the defendant's motion for another extension of the discovery deadline is denied, with the two exceptions noted in Dkt. #73.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 9/25/18